# ÆTNA CASUALTY & SURETY CO. v. UNITED STATES.

### Civ. 8130.

District Court, E. D. New York.

Jan. 14, 1948.

Edward W. Springsteen, of New York City, for plaintiff.

J. Vincent Keogh, U. S. Atty., of Brooklyn (Eli Resnikoff, Asst. U. S. Atty., of Brooklyn, of counsel), for defendant.

KENNEDY, District Judge.

The complaint in this action alleges that on February 8, 1945, one Peter Vambell, employed by the Federal Reserve Bank of New York, was injured near the loading platform of the General Post Office building at 33rd Street and Eighth Avenue, Borough

334

of Manhattan, City of New York, as the result of the negligence of post office employees. It is averred that the plaintiff had, prior to that date, issued a workmen's compensation policy to Vambell's employer, and that pursuant to the policy Vambell received and accepted certain sums of money due him, but did not within one year after the accident bring suit against the defendant. It is said that the plaintiff filed its claim with the Post Office Department under date of April 26, 1946, but withdrew it on September 16, 1946. This claim asserted that plaintiff is the subrogee of Vambell. Workmen's Compensation Law of the State of New York, Consol.Laws, c. 67, § 29, par. 2.

Plaintiff believes it is entitled to maintain suit against the government under § 410 of the Federal Tort Claims Act, 28 U.S.C.A. § 931. Defendant, urging that the section last mentioned does not permit suit by a subrogee, but only by direct claimants, moves to dismiss the complaint. Plaintiff argues that not only under the express language of the Federal Tort Claims Act, but also by analogy with the Suits in Admiralty Act, 46 U.S.C.A. § 742, any subrogee is given the benefit of the government's waiver of immunity, equally with a person injured or killed (citing Phœnix Insurance Co. of Hartford v. United States, D.C. Conn. 1932, 3 F.Supp. 112; United States Fidelity & Guaranty Co. v. United States, D.C.S.D.N.Y. 1944, 56 F.Supp. 452, affirmed 2 Cir., 152 F.2d 46, and also a very recent case holding squarely that plaintiff's position is correct, and that a subrogee may maintain suit under the statute in question, namely, Hill v. United States, D.C.N.D. Tex., Amarillo Division, 1947, 74 F.Supp. 129).

As I see the problem, there is nothing before me but a question of interpretation of a statute. I am not impressed with the asserted analogy between the Suits in Admiralty Act and the statute upon which the complaint at bar is founded, so far as that analogy is said to support the right of a subrogee to sue. It can hardly be shown that there is a close analogy between a statute, on the one hand, like the Federal Tort Claims Act which gives the court of the United States jurisdiction to hear, determine and render judgment "on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death", and, on the other hand, a statute which, like the Suits in Admiralty Act, provides for the bringing of a libel in personam against the United States in cases where "a proceeding in admiralty could be maintained" against private owners. It is true that both statutes to some extent put the government on the same footing as private persons so far as liability is concerned, the one providing for liability according to the lex loci delicti, and the other tacitly providing for liability according to admiralty concepts. But it seems to me that the language of the Suits in Admiralty Act is much broader than that found in the Federal Tort Claims Act.

Nor does the legislative history of the statute under discussion shed much light on its true meaning, although there are found in that history some passing references to the question whether Congress intended that subrogees might bring suit.

As I understand section 410 of the Federal Tort Claims Act, it raises the bar of sovereign immunity only with respect to "any claim" against the United States "on account of damage to or loss of property or on account of personal injury or death" under circumstances where the government would be liable to the claimant for such damage, loss, injury, or death all in accordance with the law of the place where the act or omission occurred. Surely this description, on its face, does not cover the claim of a subrogee, who has, under a contract of insurance, and in order to earn a premium, made a payment to the injured person.

I agree with a number of things said by Judge Dooley in Hill v. United States, supra, but not with his conclusion. For example, it is clear to me that the Anti-Assignment Act, 31 U.S.C.A. § 203, does not apply to suits under the Federal Tort Claims Act. It is also clearly prescribed that local substantive law, and not federal law, supplies the rule for decision of cases against the government under this statute.

And the law of Texas, in which forum the Hill case was decided, is substantially the same as the law of New York in that, under the statutory scheme of workmen's compensation, the carrier automatically becomes the assignee of the claim of the debtor injured employee, upon payment by the carrier and provided that no direct suit is instituted against the tort-feasor by the victim of the tort.

However, I cannot be influenced in my interpretation of this federal statute by the general rule in force in the state for the determination of liability generally between a subrogee and a tort-feasor. What counts is the specific grant by Congress to a specific person of the right to bring a specific form of action against the government, which were it not for that statute would be barred. And the specific form of action permitted is by this statute one based on any claim "on account of damage to or loss of property or on account of personal injury or death" and the specific persons who here benefit by the statute are claimants "for such damage, loss, injury, or death". To hold that this covers the case of a subrogee, as I view the matter, would be to do violence to the language of the statute. It seems to me idle to argue that in general the suit of a subrogee is identical with the underlying tort claim itself.

It is quite true, as Judge Bright says in United States Fidelity & Guaranty Co. v. United states, D.C.S.D.N.Y. 1944, 56 F. Supp. 452, 453, affirmed 2 Cir., 152 F.2d 46, speaking of a case where suit was brought by an insurance carrier under the Longshoremen's and Harbor Workers' Compensation Act 33 U.S.C.A. § 901 et seq., that "the recovery here sought is the same which the employee himself might seek, and would be within the jurisdiction asserted. That it is brought in the name of someone else, who, by federal law, is given the right to sue, does not and should not change the jurisdiction status". But it is wholly unnecessary here, in view of the specific character of the statute, to go into the question of whether, generally speaking, a subrogee's suit is identical with that of the person in whose right he claims. The question here, to paraphrase Judge Bright, is whether by this particular federal law the subrogee may

sue at all. And under a statute waiving sovereign immunity, he certainly cannot unless he brings his suit clearly within the statutory description, as here he has not done.

Motion granted. Submit order.